UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
K & H RESTAURANT, INC.,

                Plaintiff,

        -against-                                17-cv-2188 (LAK)
                                                 [16-B-13151 (MKV)]
                                              [Adv. Proc. No. 17-01023 (MKV)]

DIAMONDROCK NY LEX OWNER, LLC,
HIGHGATE HOTEL L.P., MARRIOT
INTERNATIONAL, INC.,

                Defendants.
------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/22/2017

## MEMORANDUM OPINION

Appearances:

        Jesse B. Schneider
        Jacklyn M. Siegel
        DAVIS & GILBERT LLP

        *Attorneys for Plaintiff*

        Eric J. Snyder
        Alan D. Zuckerbrod
        Eloy A. Peral
        WILK AUSLANDER LLP

        *Attorneys for Defendants*
        *DiamondRock NY Lex Owner, LLC and*
        *Marriott International, Inc.*

        Loretta M. Gastwirth
        MELTZER, LIPPE, GOLDSTEIN & BREITSTONE LLP

        *Attorney for Defendant Highgate Hotel L.P.*

LEWIS A. KAPLAN, *District Judge.*

The matter is before the Court on defendants' motion to withdraw the reference of an adversary proceeding brought by plaintiff in the United States Bankruptcy Court for the Southern District of New York.[1]

## Background

In 2003, K&H Restaurant, Inc. d/b/a Raffles ("K&H") entered into a commercial lease with Lexington Hotel LLC (defendant DiamondRock NY Lex Owner, LLC's ("DiamondRock") predecessor-in-interest), as landlord, to operate a coffee shop-restaurant in the ground floor of the hotel located at 511 Lexington Avenue in New York.[2]

The lease contained various provisions relating to the interaction between hotel guests and K&H's restaurant, including that K&H would accept breakfast vouchers provided by the hotel to its guests and that K&H would provide room service subject to certain conditions.[3] The original lease contained also a number of labor-related provisions, including that K&H would comply with the provisions and standards set forth in "a certain collective bargaining agreement . . . between the Hotel Association of New York City, Inc. and the New York Hotel and Motel Trades Council, AFL-CIO (the 'Union')" (the "CBA"). If K&H failed to comply with the CBA for a period

---

[1] DI 1, DI 13. Unless indicated otherwise, all references to docket numbers refer to the district court docket, No. 17-cv-2188-LAK.

[2] DI 5-1. Upon execution, the term of the lease was ten years, commencing on January 21, 2003, *id.* at 3 (Article 43), but the parties amended the lease to extend the lease term to expire on June 30, 2027. First Amendment of Lease, DI 5-3, at 1.

[3] Second Amendment of Lease, DI 5-4, Ex. C, at ECF 3-4; MOU, DI 5-4, Ex. E, at ECF 13.

of seven days after notice from the landlord, the landlord had the right to terminate the lease.[4]

On October 24, 2013, K&H signed a memorandum of understanding with the hotel and the Union pursuant to which K&H would pay certain wages to its employees.[5] The relationship between K&H and defendants subsequently deteriorated and, in 2016, an arbitrator issued awards directing the hotel and K&H, jointly and severally, to make certain payments to the Union and to specific employees.[6]

DiamondRock issued a notice of default to K&H on October 9, 2016, stating that K&H had failed to comply with the CBA and that it had fifteen days to cure before the landlord would exercise is remedies under the lease, including its right to terminate the lease.[7] On November 7, 2016, the landlord issued a notice of cancellation and termination of the lease.[8] Shortly thereafter, on December 12, 2016, the landlord commenced a holdover proceeding in New York Civil Court.[9]

In the meantime, on November 13, 2016, K&H filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for this district. As

---

[4] Index to Lease, DI 5-1, at 21-22 (Article 87).

The lease provided also that the tenant, upon notice from the landlord, would discontinue any action that violated the landlord's union contract, and that any default under that provision would "be deemed a material default." *Id.* at 16 (Article 65).

[5] MOU, DI 5-4, Ex. D, at ECF 9-10.

[6] Arbitration Awards, DI 5-4. Ex. F, at ECF 16-30.

[7] Notice of Default, DI 5-4, Ex. H, at ECF 34.

[8] Notice of Cancellation and Termination of Lease, DI 5-4, Ex. G, at ECF 31.

[9] Verified Petition, DI 5-5.

discussed further below, that case remains pending.

K&H filed the adversary proceeding at issue here in the bankruptcy court on February 10, 2017. The complaint alleged that DiamondRock breached its contract with K&H in April 2015 by ceasing to allow K&H to exercise its rights to provide room service, breakfast and catering services to hotel guests.[10] The complaint asserted claims for breach of contract, intentional interference with contractual relationship and unjust enrichment.[11] Defendants now move to withdraw the reference.

*Discussion*

Congress has distinguished between "core proceedings arising under title 11, or arising in a case under title 11," which bankruptcy judges may hear and determine, and non-core proceedings that are "otherwise related to a case under title 11," which a bankruptcy judge may hear, but not decide without the consent of the parties.[12] Section 157(d) provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown . . . ."

The Second Circuit has articulated the following rule:

> "A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn. . . . [O]nce a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources,

---

[10] Adv. Proc. No. 17-01023-MKV, DI 1, at 6.

[11] Although K&H initially set forth nine causes of action, they have since dropped all but the claims listed above. Adv. Proc. No. 17-01023-MKV, DI 16, at 2 n.1.

[12] 28 U.S.C. § 157(b)-(c) (2012).

delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors."[13]

*Core/Non-Core Determination*

"Congress has minimal authority to control the manner in which 'a right created by *state* law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court' may be adjudicated."[14] The Second Circuit has held that:

> "[W]hether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization. The latter inquiry hinges on the nature of the proceeding. Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function."[15]

K&H argues that the Court should find that this adversary proceeding is core on the basis of *U.S. Lines*. K&H's complaint, however, does not raise the same issues that were in play in *U.S. Lines*. K&H asserts that it may not be able to move forward as a going concern without the lease.[16] This is distinct from the concern in *U.S. Lines*, in which the court concluded that an adversary proceeding brought by debtor shipping companies to determine their rights under various prepetition insurance contracts was core in part because the proceeds of the contracts were the only

---

[13] *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993).

[14] *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 637 (2d Cir. 1999).

[15] *Id.* (internal quotation marks and citations omitted).

[16] Debtor's Memorandum of Law in Opposition to Defendants' Motion to Withdraw the Reference to the Bankruptcy Court, DI 16, at 7-8.

funds potentially available to cover the personal injury claims of the debtors' employees.[17] Accordingly, the concern was not whether the debtors would be able to continue as going concerns (indeed, the debtors already were in the process of liquidation), but the extent to which the debtors would have assets for distribution to creditors.[18] Nor does this case have the same direct effect on a core bankruptcy function as did the proceeding in *U.S. Lines*, in which a declaratory judgment as to the rights under the insurance contracts impacted the distribution of the debtors' assets among creditors.[19] There is no analogous direct effect on a core bankruptcy function in this case.

As the Second Circuit long has recognized, "contract claims are not rendered core simply because they involve property of the estate."[20] In *Orion Pictures*, the court rejected the argument that an adversary proceeding was core because the claims, if collected, would have inured to the benefit of the estate and were thus essential to the administration of the state. The court reasoned that such an exception "would swallow the rule" because "[a]ny contract action that the debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus 'concern[s]' its 'administration.'"[21]

---

[17] *In re U.S. Lines, Inc.*, 197 F.3d at 638.

[18] In any case, it is unlikely that K&H will be able to take advantage of the value of the lease going forward. Judge Vyskocil, who is presiding over K&H's bankruptcy case, has already denied K&H's motion to assume the lease because K&H failed to meet its burden of proving by competent evidence that it had the financial capability to immediately or to even promptly cure its prepetition defaults under the lease or that it could provide adequate assurance of future performance under the lease. No. 16-br-13151-MKV, DI 167.

[19] *In re U.S. Lines, Inc.*, 197 F.3d at 639.

[20] *Id.* at 637.

[21] *In re Orion Pictures Corp.*, 4 F.3d at 1102.

This adversary proceeding alleges a prepetition breach of a prepetition contract that has no direct effect on a core bankruptcy function. The proceeding therefore is non-core within the meaning of Section 157(c)(1).

*Equitable Considerations*

The Court turns now to the second part of the *Orion Pictures* analysis and considers "questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors."[22] I conclude that these factors weigh against withdrawing the reference.

Judge Vyskocil has become highly familiar with the factual record. She has held multiple hearings in which the lease at issue was discussed. She has ruled on K&H's motion to assume the lease. It would be both more economic and more prudent for Judge Vyskocil to consider K&H's claims in the first instance and set forth her findings of fact and conclusions of law, which no doubt will run consistently with her prior rulings concerning the lease.

---

[22] *Id.* at 1101.

*Conclusion*

For the foregoing reasons, defendants' motion to withdraw the reference [DI 1, DI 13] is denied.

SO ORDERED.

Dated: December 22, 2017

_____
Lewis A. Kaplan
United States District Judge